UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

RICHARD PINTAGRO,

                        Plaintiff,        **No. 1:15-cv-00478(MAT)**
                                                      **DECISION AND ORDER**
        -vs-

CAROLYN W. COLVIN, ACTING COMMISSIONER
OF SOCIAL SECURITY,

                        Defendant.

---

## I. Introduction

Represented by counsel, Richard Pintagro ("Plaintiff") instituted this action pursuant to Title XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner")[1] denying his application for Supplemental Security Income ("SSI"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## II. Procedural Status

On September 10, 2012, Plaintiff protectively filed an SSI application, alleging a disability onset date of November 7, 2002, due to a traumatic ruptured disc, hypertension, dyslipidemia, obstructive sleep apnea, and chronic low back pain. (T.172-78,

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 20, 2017. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted, therefore, for Acting Commissioner Carolyn W. Colvin as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

194).² This claim was denied initially on December 4, 2012. A hearing was held by administrative law judge Mark Solomon ("the ALJ") on October 18, 2013, via videoconference. Plaintiff appeared with his non-attorney representative and testified. The ALJ issued an unfavorable decision on February 11, 2014, finding that despite Plaintiff's severe impairments of lumbar disc disease, obesity, and obstructive sleep apnea, Plaintiff has the residual functional capacity ("RFC") to perform sedentary work with some additional limitations. The ALJ's decision became the Commissioner's final decision on April 8, 2015, when the Appeals Council denied Plaintiff's request for review. Plaintiff then commenced this action.

Before the Court are the parties' cross-motions for judgment on the pleadings. The Court will discuss the record evidence further below, as necessary to the resolution of the parties' contentions. For the reasons discussed below, the Commissioner's decision is affirmed.

**III. Discussion**

    **A.    RFC Unsupported by Substantial Evidence Due to Failure to Properly Weigh Medical Consultant's Opinion**

Plaintiff argues that the ALJ erred in his weighing of the RFC questionnaire completed by State agency medical consultant Dr. Walter Cobbs on February 15, 2013. (T.262-69). Plaintiff further

---

² Citations to "T." in parentheses refer to pages from the certified administrative transcript.

contends that the RFC assessment is not supported by substantial evidence.

On February 15, 2013, State agency medical consultant Dr. Walter Cobbs provided an opinion based on his review of the available medical records. (T.262-69). With regard to Plaintiff' exertional limitations, Dr. Cobbs opined that Plaintiff could occasionally lift and/or carry (including upward pulling) 20 pounds, frequently lift and/or carry (including upward pulling) 10 pounds, stand and/or walk (with normal breaks) at least 2 hours in an 8-hour day, sit (with normal breaks) about 6 hours in an 8-hour day, and had an unlimited ability to push and/or pull (including operation of hand/foot controls). (T.263). Dr. Cobbs cited the following evidence in support of these limitations: MRI dated October 6, 2008, showing mild to moderate degenerative disc disease ("DDD") without spinal stenosis or nerve root compression; a lumbar spine x-ray dated November 27, 2012, showing mild to moderate DDD; and office notes from J.G. Dahlie, M.D. (to whom Plaintiff apparently was referred by Dr. Erika Connor) showing "limitation of lumbar forward flexion to 20 deg[rees], but in multiple exams, DTR [deep tendon reflexes], SLR [straight-leg raising], sensory intact; toe and heel walk limited by back pain, gait slow, not antalgic, no aid to ambulation, no limitation upper extremities; may walk up to 4 hrs/8 hr day, unscheduled rest

approximately 10 min[utes] hourly, sit [sic]. Sit may take 5 min[ute] break to stretch, 1/hr." (T.263-64).

The ALJ found that Plaintiff has the RFC to perform sedentary work,

> except that he is able to sit for 6 hours in an 8-hour workday, and stand/walk for 2 hours in an 8-hour workday; can lift or carry 10 lbs. occasionally and 5 lbs. frequently, can never climb ropes, ladders, or scaffolds; [can] occasionally (very little to 1/3d [sic] of the work day) climb ramps/stairs; and occasionally balance, crawl, crouch, kneel or stoop. In addition, he is able to perform work that does not involve any exposure to unprotected heights, hazardous machinery, weather extremes, or pulmonary irritants.

(T.14). The ALJ did not include any unscheduled rest breaks in the RFC.

The ALJ stated in his decision that Dr. Cobbs' RFC questionnaire deserved "substantial weight" "except for the limits regarding standing/walking." (T.18). According to Plaintiff, the ALJ failed to reconcile Dr. Cobbs' report with the RFC by failing to include unscheduled rest breaks. Plaintiff interprets Dr. Cobbs' report as stating that he needs "unscheduled rest approximately ten minutes hourly" to sit, and, when sitting, needs one five-minute break every hour to stretch. This is a misreading of the record.

The section in which these rest breaks were mentioned were not part of Dr. Cobbs' opinion regarding Plaintiff's exertional limitations. Rather, Dr. Cobbs' reference to "unscheduled rest" was made in response to question 6 of the RFC form which asked Dr. Cobbs to "[c]ite the specific facts upon which [his]

-4-

conclusions [in questions 1 through 5] are based." (T.263).³ In short, Plaintiff's argument relies on a mischaracterization of the form completed by Dr. Cobbs, and is without merit.

**B.    Erroneous Weighing of Treating Physician's Opinion**

On August 8, 2011, Plaintiff's primary care physician Dr. Erika Connor wrote a letter stating that she was currently treating Plaintiff for chronic low back pain secondary to traumatic ruptured discs, hypertension, dyslipidemia, and obstructive sleep apnea. (T.254). She asserted that he "has been incapacitated since 2002 because of his back pain" and "is not able to work both because of his chronic pain but also secondary to the nature of treatment for his back pain." (Id.). Dr. Connor did not provide an opinion as to any specific functional limitations due to Plaintiff's back pain.

The ALJ assigned "partial weight" to Dr. Connor's August 8, 2011 letter because, as the ALJ correctly noted, it was on an issue reserved to the Commissioner. (T.18). An opinion that a claimant is totally or partially "disabled" or is under a "disability", even from an acceptable medical source such as a treating physician, is not entitled to any particular weight. See SSR 96-5p, 1996 WL

---

³
    The notation, "may walk up to 4 hrs/8 hr day" is in the same section of the form as the notation about rest breaks, but Plaintiff does not argue that it is part of Dr. Cobbs' opinion. This is likely because it is actually less restrictive than the 2-hour limitation on standing and/or walking indicated by Dr. Cobbs on the form. This cherry-picking of the record by Plaintiff further undermines his argument.

-5-

362206, 61 FR 34471-01 (S.S.A. July 2, 1996). Pursuant to 20 C.F.R. § 404.1527(e) and § 416.927(e), "some issues are not medical issues regarding the nature and severity of an individual's impairment(s) but are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability[.]" SSR 96-5p, 1996 WL 362206, 61 FR at 34472. Among these issues are whether an individual's impairment(s) meets or is equivalent in severity to the requirements of any impairment(s) in the listings; whether an individual's RFC prevents him or her from doing past relevant work; and whether an individual is "disabled" under the Act. Id. "[T]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance[,]" id., because to do so would effectively "confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." Id.

The ALJ also found that Dr. Connor's opinion that Plaintiff was "incapacitated" was inconsistent with the physician's own treatment notes. (T.18). This finding is based on substantial evidence in the record. The notes from early 2012[4] reflect

---

[4] While there are notations of treatment by Dr. Connor prior to 2012 (T.453), the record only contains treatment notes from Dr. Connor beginning in 2012. (T.282-305, 362-420).

diagnoses of obesity, hypertension, obstructive sleep apnea, insomnia, and lower back pain, as well as various complaints of anxiety due to situational stressors. (T.282-305, 362-420). Plaintiff's appointments were generally for medication refills. (T.282-305, 362-420). Dr. Connor consistently prescribed narcotic medications, such as Fentanyl and hydrocodone, for Plaintiff's back pain. While there are some abnormal clinical findings noted (e.g., distant breath sounds, elevated blood pressure, back tenderness, decreased lumbar range of motion, some flattening of lumbar lordosis, and muscle spasms (T.282-305, 362-420), Dr. Connor's treatment records also demonstrate that he experienced alleviation of his symptoms with treatment, and he consistently had negative straight-leg-raising tests and normal ambulation. (T.282-305). On April 26, 2012, Plaintiff reported that Clonidine was not helping his back pain, but he also reported that he had been walking more, and Dr. Connor encouraged Plaintiff to exercise regularly. (T.293, 301). On August 31, 2012, Dr. Connor noted Plaintiff had a normal gait, that he could sit and change positions comfortably. (T.287).

Plaintiff argues that the ALJ was required to recontacting Dr. Connor to request clarification or a more detailed opinion regarding Plaintiff's RFC. "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim."

Rosa v. Callahan, 168 F.3d 72, 79 n. 5 (2d Cir. 1999) (internal quotation marks omitted).[5]

Here, the ALJ possessed a complete medical record containing multiple medical opinions, including the reports of Dr. Cobbs and consultative physician Dr. Joseph Prezio. Under the circumstances of this case, where the record is sufficient to make an informed decision on the question of disability, remand solely to recontact Dr. Conner is not required. See, e.g., Tankisi v. Comm'r of Soc. Sec., 521 F. App'x 29, 33 (2d Cir. 2013) (unpublished opinion) ("Given the specific facts of this case, including a voluminous medical record assembled by the claimant's counsel that was adequate to permit an informed finding by the ALJ, we hold that it would be inappropriate to remand solely on the ground that the ALJ failed to request medical opinions in assessing residual functional capacity."); see also Micheli v. Astrue, 501 F. App'x 26, 29–30 (2d Cir. 2012) (unpublished opn.) ("Micheli argues that to the extent Dr. Tracy's opinion was unsupported or internally inconsistent, the ALJ was required to re-contact Dr. Tracy for clarification. This argument is without merit. The mere fact that

---

[5] In addition, effective March 26, 2012, the Commissioner amended 20 C.F.R. § 416.912 to remove subsection (e). Section 416.912 now affords adjudicators more flexibility in determining when and how to obtain information from medical sources to resolve an inconsistency or insufficiency in the evidence he or she provides. See How We Collect and Consider Evidence of Disability, 77 Fed. Reg. 10,651, 10,655 (Feb. 23, 2012) (codified at 20 C.F.R. §§ 404.1512, 416.912). This version of 20 C.F.R. § 416.912 was in effect when the ALJ adjudicated Plaintiff's claim.

-8-

medical evidence is conflicting or internally inconsistent does not mean that an ALJ is required to re-contact a treating physician.").

**C. Erroneous Credibility Finding**

The ALJ found Plaintiff's subjective complaints less than fully credible in light of Plaintiff's daily activities, including his performance of community service, "lack of support in the objective evidence for the level of impairment alleged," "extensive polysubstance abuse," and "treatment non-compliance." Plaintiff argues that the ALJ's credibility analysis was not based on substantial evidence. Plaintiff only challenges the ALJ's consideration of his "polysubstance abuse."

Generally speaking, it is the function of the ALJ "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983). Where an ALJ rejects witness testimony as not credible, the basis for the finding "must . . . be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260–61 (2d Cir. 1988) (citing Carroll, 705 F.2d at 643). The Commissioner's Regulations instruct ALJs to consider a number of factors in making a credibility determination, including (1) the claimant's daily activities; (2) the nature, duration, frequency and intensity of his symptoms; (3) precipitating and aggravating factors, and (4) the type of medication and other

treatment or measures which the claimant uses for the relief of pain and other symptoms. The Regulations also provide that the the Commissioner "will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [his] statements and the rest of the evidence." Id. §§ 404.1529(c)(4), 416.929(c)(4).

While the Regulations provide that the Commissioner "will not reject [a claimant's] statements about the intensity and persistence of [his] pain or other symptoms or about the effect [his] symptoms have on [his] ability to work . . . solely because the available objective medical evidence does not substantiate [his] statements[,]" 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2), the ALJ nevertheless must determine credibility "in light of medical findings and other evidence[ ] regarding the true extent of the pain alleged by the claimant." Mimms v. Heckler, 750 F.2d 180, 186 (2d Cir. 1984) (citation and internal quotation marks omitted).

Here, Dr. Connor routinely observed normal ambulation and negative straight leg raising tests. (T.16, 282-305, 362-420). In fact, Dr. Connor "really emphasized [illegible] reg[ular] exercise [and] wt [sic] loss." (T.293). Consultative physician Dr. Prezio observed that Plaintiff displayed minimal lumbar tenderness despite his significantly decreased lumbar range of motion; SLR also was negative, with no muscle atrophy, and no neurological deficits. (T.274-75). Although Plaintiff did everything in "slow motion" as

if he were "asleep during the entire evaluation" with Dr. Prezio, the consultative psychologist that same day did not describe Plaintiff as somnolent; instead, he was alert and oriented.[6] Similarly, Dr. Frank Arnal observed normal gait and station, normal muscle strength, normal mood and affect, and that Plaintiff was alert and oriented. (T.281). The objective findings thus did not corroborate Plaintiff's allegations that he could only sit for 20 to 30 minutes at a time, or stand for 20 minutes at a time. (T.15, 42-44). Even so, the ALJ did not improperly discount Plaintiff's subjective complaints solely because the ALJ found them unsupported by objective findings.

The ALJ was permitted to consider Plaintiff's treatment noncompliance, which was documented in the record. Plaintiff's primary care physician, Dr. Connor, repeatedly advised him to stop smoking marijuana, which he did not do. (T.285, 293, 329, 332). Plaintiff admitted to Dr. Connor on April 26, 2012, that he was "smoking marijuana and not using his sleep apnea ventilator as directed." (T.16). SSR 96-7p states, in pertinent part, that "the individual's statements may be less credible . . . if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this

---

[6] The Court notes that even "taking the physical examination on [sic] face value[,]" (T.276), Dr. Prezio placed no limitation on Plaintiff's ability to sit, and only moderate restriction on "engaged standing and walking of any long nature." (Id.).

failure." SSR 96-7P, 1996 WL 374186, at *7 (S.S.A. July 2, 1996); see also, e.g., Garcia v. Colvin, No. 14-CV-3725 DF, 2015 WL 5786506, at *25 (S.D.N.Y. Sept. 29, 2015) (in assessing claimant's credibility, the ALJ considered, inter alia, the fact that claimant's treating physician was concerned about pain magnification syndrome, claimant's reported daily activities, and claimant's failure to consistently comply with physical therapy and mental health treatment, which were "all permissible factors to consider in making a credibility assessment").

With regard to Plaintiff's alleged "polysubstance abuse," the ALJ used a term suggesting that Plaintiff was abusing more than one substance.[7] As Plaintiff notes, he was consistently prescribed narcotic medications for his back pain; if he had been abusing his narcotic medications, one surmises that Dr. Connor would have declined to refill his prescriptions. The Court notes that Dr. Connor indicated on at least one occasion that Plaintiff was "reminded to take his medications as prescribed," but this is a vague statement and does not establish that he was abusing his narcotic pain medications. The Court therefore finds that the ALJ's statement regarding "polysubstance abuse" was not supported by substantial evidence.

---

[7]

The APA's Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision ("DSM-IV-TR") reserves diagnosis "304.80 Polysubstance Dependence" for "behavior during the same 12-month period in which the person was repeatedly using *at least three groups* of substances (not including caffeine and nicotine) but no single substance predominated." APA, DSM-IV-TR 293 (4th ed. 2000) (emphasis supplied).

However, substantial evidence does support a finding that Plaintiff was illegally using marijuana, against his doctor's express instructions. There are also multiple instances in the record where Plaintiff falsely denied using marijuana. For instance, Plaintiff told consultative physician Dr. Prezio that he "does not . . . use street drugs and has never smoked." (T.273). While Plaintiff has pointed out an apparent inaccuracy in the ALJ's decision, the Court finds that any error was harmless, because the ALJ's ultimate conclusion with respect to Plaintiff's credibility was supported by substantial evidence. Therefore, the Court declines to overturn the Commissioner's decision on this basis. See, e.g., Salmini v. Comm'r of Soc. Sec., 371 F. App'x 109, 113 (2d Cir. 2010) (unpublished opn.) ("Although [claimant] points to a handful of purported inaccuracies in the ALJ's description of [his] activities, none of these inaccuracies cut against, or have any bearing on, the ALJ's ultimate conclusion with respect to [his] credibility. In short, because substantial evidence support the ALJ's credibility determination, there is no basis for us to disturb it here.") (citing Aponte v. Sec'y, Dep't of Health & Human Servs., 728 F.2d 588, 591 (2d Cir. 1984)).

## IV. Conclusion

For the foregoing reasons, the Court finds that the Commissioner's decision is not legally erroneous and is supported by substantial evidence. Accordingly, the Commissioner's decision

is affirmed. Defendant's motion for judgment on the pleadings is granted, and Plaintiff's motion for judgment on the pleadings is denied.

The Clerk of Court is directed to close this case.

**SO ORDERED.**

S/Michael A. Telesca

   HON. MICHAEL A. TELESCA
United States District Judge

Dated:   December 27, 2017
         Rochester, New York.